Judge Noonan, thank you for inviting us here today. I'm Wade Curtis. I represent Ricky Armstrong, the defendant in this case. He was one of three defendants. As you know, one of the defendants, a woman, was granted a motion, directed motion on the verdict and left the case at the end of the government's case. The remaining two defendants were Ricky Armstrong and Michael Bullard. As you know, in this case, it happened in the very early morning hours of July 4, 2008, at Nampa, Idaho, on the grounds of a Walmart store. Because of the racial complexity of these individuals, Bullard and Armstrong being Caucasian white young men, and Mr. Smith, the victim, being of the African-American descent, who was born and raised in Idaho, born and raised in Nampa, Idaho. This fell under the civil rights statutes, and therefore Bullard and Armstrong were charged with violation of civil rights, because the Walmart store had in it a McDonald's restaurant and had an arcade in the ante area of Walmart. And thus, because of the place of entertainment and a place of eating, we now have a racial offense. As your honors may be well aware, there is no assault statute in the federal system. There is no aggravated assault in that sense, and so this would have otherwise been a state offense solely prosecuted by the state prosecutor, but for the interplay of these two civil rights statutes. I was cautioned by Judge Lodge at trial that I shouldn't apologize on behalf of Mr. Armstrong, but I feel that we did at the trial, and we do now, for this unfortunate incident that happened to Mr. Smith. But we have here a guidelines problem, a sentencing problem, in the sense that had this just been a hate crime under 2H1.1, Mr. Armstrong could have been sentenced between 27, or it was a base offense level 12, he could have been sentenced to 27 to 33 months. Instead, because of the hate crime under 3A1.1A, there was a three level increase because of the judge's, we believe, mistaken belief that Mr. Armstrong had intentionally selected the victim because of his race. There's no question in this case that these boys had swastikas on them and other symbols of racism, but there's no evidence that Ricky Armstrong was ever involved in attacking and beating up any minority. He'd been in prison from his youth as a juvenile in California. Except for this person. Yes, Your Honor, yes. It doesn't really matter what he did before, it mattered what he did here. Well, yes, I'm talking, so the issue on the sense of that particular aspect of the guidelines is whether or not Ricky intentionally selected Mr. Smith for this beating. The testimony is well briefed in the two briefings of the government and the defense. There was, they had gone to the Walmart to get some orange juice to drink with some vodka. They had no discussions of beating anybody up as going over there or leaving the apartment. In the mail car, as we affectionately referred to it, Bullard makes a comment that there is a man of racial descent over there and that he's been being stared at. There's testimony, we have Mr. Whitewater, who was the fourth participant in this action, who pled guilty and testified against these other individuals that there was some racial slurs expressed at that time. Mr. Smith heard nothing. And so, outside the Walmart, Mr. Bullard, Mikey, waits for Mr. Smith. Ricky is pacing back and forth in the driveway. Nobody knows what Bullard's going to do until he does it. Now, Bullard arguably had maybe talked with the other boys about the fact that he wanted to find out why Smith was staring at him. But there was no selection by Mr. Armstrong of this individual to be beat up as he was on that particular occasion.  First of all, there was a discussion among the defendants in the Walmart about that they were going to beat him up with racial terms involved and that Armstrong, as they were chasing him, used racial terms at that point. Isn't that so? Well, Smith says he doesn't know who yelled those things. I understand, but there was evidence that Armstrong did this, was there not? Beat him or talked about it? Talked about it. He had asked Bullard, do you think you can do this? Do you think you have the physical strength capacity to do this? That was Armstrong's testimony. Whitewater says that, yeah, we talked about whether or not Bullard was going to beat him up. But Armstrong's testimony was, I asked him, do you want me to? It doesn't matter what Armstrong's testimony was. The jury resolved that. Right, right. But we're on the sentencing side of it, whether or not Rickey selected him as the victim. I'm asking whether there was evidence. The jury obviously found so, right? Well, the jury found that Rickey Armstrong aided and abetted Bullard in beating Smith. That was the jury's point. For racial reasons. And that this was racially motivated. Right. Right. But they didn't find that Rickey had selected the victim. And we may be in a discussion, like you had in the last argument, as to this issue of intentionally selecting a victim. And I may need to move to my other argument. Do you think selection means that he was the first person who selected him? If one person selected him and then he said, yes, I think I will do it, too, for racial reasons, is that selecting him? Yes, because that's the Woodley case. And in the Woodley case, they all got in the cars. They were all chasing after the African-American. And then the person, Woodley, did take a shot at him. And so, yes, he had selected him when he shot at him. In this case, Armstrong. Why didn't he select him? Go ahead. Okay. I mean, at least he selected him when he shot at him, is what I'm saying. He may have selected him when he got in the car and drove after him. But at least when he shot at him, he was selecting him. Now, in this case, I think there's a distinction in the findings here, because the jury did not find that he intentionally selected him. He found that he was an aider and abetter and that he wasn't a principal. Now, I realize that you treat aiders and abetters as if they were the principal. But for the sense of this guideline, I think there is a distinction. The other one is the two-level enhancement based on perjury. And in this case, we believe that the court did not do its duty in the sense of identifying specifically the statements that were made by Armstrong that the prosecution claimed were perjurious and that the court did not go through the right steps. And we've set out the discussion of the judge in all of those areas. It was my intent to reserve two minutes for rebuttal. I don't know that I need that. We've not had much questions. It's your pleasure, Your Honors. Did the principal get the same sentence? Your Honor, I did not. I've not made note of that. And I think he got charged with the same enhancements. And his criminal history level was different, I think, by one level. So in that sense, I think he got relatively the same sentence. What exactly is your perjury argument? Why the judge was not entitled to conclude that there was perjury? Because he just followed the ‑‑ his thing, it's illogical. I mean, Ricky testified that he pulled Bullard off of Smith and had not kicked him. He didn't believe him. And the jury didn't believe him, and he didn't believe him. Right. But we don't know what state ‑‑ in his direct testimony at trial, in his cross-examination, he did not, like in the Supreme Court case of Denning, he did not say, I wasn't there. I didn't sell drugs. No, he said, I tried to stop it, and I didn't have racial motivation. And the judge specifically said, I don't believe any of that. And the jury didn't believe him. But isn't that a general denial of guilt? Isn't that an accused right to stand up and say, hey, I'm not a conspirator. I didn't form an agreement. I didn't enter into a ‑‑ No, but he specifically said, for example, I didn't say things that he earlier said he did say and that the judge believed he did say. If we go back and go through that in his initial statement to the officer when he made the statement about racial slurs, he said, I don't recall making any. He then said, it could have been said by Bullard. And in his cross-examination, ultimately it came down to the very same thing. Smith says he never heard any racial slurs except outside the Walmart, and then he heard two, and they came from two different people. But he couldn't identify who were the declarants. But there's nothing in there that says on this particular statement, Ricky lied. The judge just said, well, you were found guilty by the jury, therefore you must have lied because it is illogical that they would have found you guilty had they believed you. Therefore, you must have been telling a falsehood. And we don't believe that that's the basis for a one‑year enhancement or nine to 11 months enhancement. Thank you very much for everything. Thank you, Your Honors. Thank you. Yes. Thank you. Your Honor, the district court properly enhanced Armstrong's sentence for obstruction of justice. And it did not clearly err when it found that he perjured himself when he took the stand and basically gave a non‑racial account    of the attacks that were committed against him. Specifically, the court found that Armstrong lied when he claimed that he did not call Smith a racial slur during the attack outside Walmart. In fact, co‑defendant Whitewater testified otherwise, pointing out that Armstrong chased Smith down the parking lot, shouting, get him, and using a racial slur. And Smith also remembers being called a racial slur as he fled from his attackers. And then more generally, the court stated that it rejected Armstrong's non‑racial account of the motives for the attack. Armstrong testified that Smith provoked Bullard by staring at him. He even said that he chased the two down the parking lot and attempted to intervene and stop the fight. He claimed that he punched Bullard, not Smith, because he was trying to get co‑defendant off the victim. The courts rejected this description, and it specifically said that it found this description of events illogical, inconsistent with the language the group was using, that it did not square with Armstrong's past personal history, which I should point out did include other incidents of racial fights. The court specifically stated on ER page 59 that while Armstrong was in juvenile detention, he participated in, quote, numerous racial disturbances and fights. The court also said that this didn't square with the jury findings. So he relied on the jury findings, and he also gave his own reasons for disbelieving Armstrong's testimony. The court also recognized that this testimony was material. As the court put it, racial motivation was exactly what the jury had defined, and Armstrong's denial of the use of racial slurs was material to his motivation. Armstrong's fabricated description of the crime was willful because he could not have been mistaken about his own motives. Furthermore, he insisted in denying use of racial statements even after he reviewed testimony to police, an interview he gave where he admitted using certain racial slurs. Also, the court did not err in enhancing Armstrong's sentence for racial selection of the victim. This enhancement is appropriate in the case of a hate crime, and Armstrong isn't relieved of his responsibility for the racial nature of this attack, regardless of whether he or Bullard first selected the victim. In fact, I should point out that the jury did not find which person was a principal and which person was an aider and abetter. All the co-defendants were charged as aiders and abetter. So under defendant's theory of the case, no one actually selected Smith. Well, the guideline, though, does seem to require that this person have selected him. The guideline doesn't say that the person must have individually and by himself selected the victim. It does say the defendant intentionally selected any victim because of the race. Yes, Your Honor. So you've got the defendant intentionally selected. So you're saying there can be more than one selection by people in an incident like this? Certainly. It doesn't matter who first selected the victim and joined in. Well, that's different. I mean, there's a slightly nuanced position. One would be it doesn't matter who first selected them as long as the defendant also selected them. And the other, which is what I thought you were saying, is it doesn't matter whether the defendant selected him as long as he was aiding and abetting somebody who selected him. No, Your Honor. I was saying it doesn't matter who first selected the victim. I think defendant's position is that Bullard alone selected the victim and because he first identified Smith that somehow Armstrong is not responsible. But Armstrong made a decision to join in that fight, and as he ran after Smith in the parking lot, he shouted racial slurs at him. So that shows that he joined in this endeavor because of Smith's race. And a good case for Your Honor to look at this is the – That's sort of – in other words, your position is that aiding and abetting is enough for a selection. Is that right? I'm not sure if it would be in every single case, but certainly it is here. Well, typically aiding and abetting, of course, you share the intent. If there's an intent requirement, I suppose this is an intent requirement. Yes. And in this case he had to act because of race, at least for the 245. So it doesn't matter if he was more or less responsible than Bullard for selection of the victim. He selected the victim adequately enough for the enhancement here. We are not arguing that just aiding and abetting necessarily would be enough. Of course, we don't have to get there because we have direct evidence that he in fact himself had a racial motivation. He might have had that anyway for aiding and abetting, but we have evidence that he actually had the same racial motivation. Yes, Your Honor. Certainly the jury found that he acted with racial intent, and there's plenty of evidence of that. And the Court made specific findings on that. In fact – Are the standards the same, though, for the hate crime enhancement and for the statute – under the statute? Well, this Court held in Smith that there's no reason to create a different standard for hate crime and enhancement. The jury, of course, found that Armstrong acted because of race, and the Court stated on ER page 58 that the Court believed Smith was selected solely because of his race. So certainly he made the appropriate findings, even if one – Yeah, of course. I don't believe that the defendant here disputes that Smith was selected because of his race. It was a question of whether Armstrong participated in that selection or did the selection. Yes, Your Honor. And our response would be that Armstrong did select the victim. He may not have been the first person to select the victim. He may have followed on Bullard's choice, but that doesn't relieve him of responsibility for this racial attack. I kind of hear two answers. One is that there's only one selection of the victim, but others can participate in it and be responsible for it. And another is that there can be any number of selections. Each individual can select the victim. I think that's true, Your Honor. Which one? Both are true? Well, in this case, we don't know for sure who selected the victim. But the court need not – first selected the victim. But the court need not resolve that. It need only find that Armstrong chose to join in because of the victim's race. And the jury found that. And the evidence is very clear. So selecting is the same as joining in something because of the race, joining in an assault because of the race. Yes, Your Honor. And it amounts to a selection in your view. Yes. A good case to look at this is the Tenth Circuit's case in Woodley. And their co-defendants had gone to a bar and started taunting some African-American patrons. And this went on for quite a while. Finally, the bar was closed, everyone was kicked out, and the co-defendants got in a car and decided to chase the victim. Another person joined in at that point, Defendant Kinslow. And although he hadn't been involved in this sort of ongoing taunting of the victim, so he joined in basically a plan already in progress, Kinslow was the person who actually shot at the victims here. So although he was not the person who first came up with them as a victim, he was not relieved of his responsibility for the racial motivation there. And he was also charged with a conspiracy crime. And the court said that it was simply illogical to believe that he did not select the victim because of the race because the only reason to pursue him and shoot at him was because of race. Similarly, the court here said that it believed the only reason for the racial attack that both Armstrong and Bullard participated in was because of Mr. Smith's race. I should also point out that the court found that the enhancement for an obstruction of justice also covers the requirement of willfulness because Armstrong's fabricated description of the crime was willful. He could not have been mistaken about his own motives, and he repeatedly denied his use of the testimony. And I would argue that this... In your view, would it be... Could he get the enhancement for perjury if he had simply testified that he didn't do this? If that was all there was, Your Honor, I think it would be a general denial of guilt. But he actually made several specific statements. If the jury finds him guilty, can he be held in perjury for denying his guilt? As Dunnegan held it, the right to testify on one's behalf doesn't include a right to deny guilt under oath. So if the court were to make other findings, a pejorious denial of guilt would be enough for the enhancement. But in this case, Armstrong made several specific statements. He described the crime. He stated that he did several things, that he didn't say things. He made specific denials, and there were a lot of findings. I would also point out that in Hinestrosa, this case, upheld a similar finding, finding that when a court says defendant perjured himself, that includes necessarily the forenoning of materiality for mens rea. Okay. If there are any other questions, Your Honor, we would ask that the court affirm Armstrong's sentence in this case. Thank you very much. Thank you for your argument. I will. Thank you. Okay. Thank you very much. The case of United States v. Armstrong is submitted.
judges: Canby, Noonan, Berzon